## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
## FORT LAUDERDALE DIVISION

CASE NO.:



AERIAL BANNERS, INC.,

    Plaintiff,

v.

FEDERAL AVIATION
ADMINISTRATION, and
MARION C. BLAKEY, Federal
Aviation Administrator,

    Defendants.

_____/

### COMPLAINT FOR INJUNCTIVE RELIEF

**COMES NOW** Plaintiff, Aerial Banners, Inc., (hereafter "Aerial"), and submits this Complaint for Injunctive Relief against Defendants, Federal Aviation Administration (hereafter "FAA") and Marion C. Blakey, seeking temporary and permanent injunctive relief to restrain the FAA from effectively shutting down Aerial's business by continuing to enforce its Revocation of Certificate of Authorization dated December 14, 2007, which cancelled and revoked Respondent's Certificate of Waiver or Authorization (Form 7711-1), a Certificate that was issued to Aerial on October 1, 2006. In support hereof, Aerial shows this Court the following:

1.     This court has jurisdiction to hear this action because it arises under the Constitution, laws, or treaties of the United States within the meaning of 28 U.S.C § 1331. Furthermore, it is a civil action arising under an Act of Congress regulating commerce or protecting trade and protecting commerce against restraints and monopolies within the meaning of 28 U.S.C. § 1337.

1

Dockets.Justia.com

2.    Venue lies in the Southern District of Florida pursuant to 28 U.S.C. § 1391(e) because each defendant is an officer or employee of the United States or its agencies and Aerial resides and has its primary place of business in this District, and no real property is involved in this action.

3.    Plaintiff Aerial is a Florida corporation with its principal place of business in Hollywood, Florida.

4.    Aerial is a banner towing company headquartered at the North Perry Airport in Pembroke Pines, Broward County, Florida.  Aerial started its operation in 1992, serving mostly South Florida markets.  Today Aerial is the third largest banner towing company in the United States, operating in every region and every major U.S. city.

5.    Defendant FAA is a federal agency organized and existing pursuant to the Federal Aviation Act of 1958, 49 U.S.C. § 44709 *et seq.*

6.    Defendant, Marion C. Blakey, is the Administrator to the Federal Aviation Administration, having been duly appointed and qualified.

7.    In order to operate as a banner towing company under FAA rules (that generally prohibit the towing of banners), Aerial had to apply for and obtain a Certificate of Authorization that authorized Aerial to engage in the banner towing business.

8.    The FAA, as recently as October 1, 2006, renewed Aerial's Certificate of Authorization.   A true and correct copy of Aerial's Certificate of Authorization is attached hereto and incorporated herein as **Exhibit "A."**

9.    On or about December 7, 2007, Jay Rodriguez, an FAA inspector for the Ft. Lauderdale region, visited Aerial's facility, ostensibly for a routine inspection.  Mr.

2

Rodriguez met with Mr. Benyo, the President of Ariel, during that inspection, at which time Mr. Rodriguez raised several issues.

10.    Specifically, during the visit, Mr. Rodriguez asked whether Aerial possessed a more current pilot operating handbook ("POH") for Aerial's Piper PA-25 aircraft (which Aerial does), stated that Aerial was violating federal regulations by operating an aircraft, N131AB, with two airworthiness certificates,[1] and expressed a concern over pilot safety.

11.    At no time during this meeting did Mr. Rodriguez state or insinuate in any way that the issues being raised and discussed were major issues for the FAA, or that any of the issues discussed might in any way jeopardize Aerial's ability to continue to conduct its business.

12.    In response to the December 7th comments by Mr. Rodriguez, Aerial sent correspondence on December 9, 2007, detailing Aerial's proposed solutions to Mr. Rodriguez's concerns. A true and correct copy of Aerial's December 9, 2007, letter is attached hereto and incorporated herein as **Exhibit "B."**

13.    The FAA never acknowledged receipt of or otherwise respond to Aerial's December 9, 2007, correspondence.

14.    Instead, on December 17, 2007, Aerial received a notice dated December 14, 2007, from the Manager of the Federal Aviation Administration South Florida Flight Safety District Office, Miami, Florida, on behalf of the FAA Administrator, notifying Aerial that effective immediately its Certificate of Waiver or Authorization to operate

---

1. Contrary to Mr. Rodriguez's statement, 49 CFR 21.187 permits aircraft to have multiple airworthiness certificates.

banner-towing aircraft was canceled. A true and correct copy of the December 17, 2007, notice is attached hereto and incorporated herein as **Exhibit "C."**

15.    Since Aerial's business is as the operator of a business that provides banner-towing aircraft for paying customers, the cancellation of the Certificate of Authorization puts Aerial out of business, its contracts at risk, and provides an ample opportunity to Aerial's competitors to purloin Aerial's customers and contracts.

16.    The FAA informed Aerial that the FAA considered the following incidents in its determination to revoke the Certificate of Authorization: (a) five Aerial aircraft accidents between September 25, 2005 and November 10, 2007; (b) maintenance issues occurring on June 5, 2005 and September 13, 2005; (c) a banner tow aircraft issue occurring on December 12, 2005; (d) the installation of an engine in aircraft N131AB without approved data and a FAA form 337; and (e) an aircraft operating with two airworthiness certificates.

17.    Notwithstanding these incidents, the FAA was fully aware of all of them at the time it renewed Aerial's Certificate of Authorization on October 1, 2006.

18.    Aerial has been cooperative with the FAA throughout, has continuously rebutted and/or proposed solutions to the issues raised by the FAA, and has requested that the FAA either not revoke Aerial's Certificate of Authorization or temporarily not enforce its decision as the revocation of the Certificate to give the parties time to work through any perceived issues.

19.    The FAA is adamant and otherwise unyielding in that the FAA has refused to take any other action or to explore any other avenues available that are not as severe in consequence and do not result in the 100% shut-down of Aerial's business.

4

20.    The FAA is also unyielding in its position that Aerial has no due process or appellant rights with regard to the decision by the FAA to revoke Aerial's Certificate of Authorization.

21.    Pursuant to FAA Order 7210.3U, Paragraph 18-1-9 (the authority under which the FAA purportedly revoked Aerial's Certificate of Authorization), a Certificate of Authorization is eligible for cancellation when "it is no longer required or there is an abuse of its provisions or unforeseen safety factors develop.  Failure to comply with the waiver or authorization is cause for cancellation." FAA Order 7210.3, para. 18-1-19.

22.    Though the notice of revocation cites FAA Order 7210.3U, Paragraph 18-1-9 as the authority for the revocation, the FAA does not specifically cite which, if any, of the four standards in Paragraph 18-1-9 were violated by Aerial.

23.    As such, the FAA has not complied with FAA Order 7210.3U that requires that at least one of the four standards be met before an Authorization is revoked.

24.    Further, Aerial was not afforded due process before this action was taken by the FAA and the FAA has failed to follow its own regulations, set forth in Paragraph 21, above, which provide for procedural safeguards to persons involved in an adjudicative processes before it.

25.    There are no administrative remedies or procedures required or available to Aerial to challenge the FAA's cancellation of Aerial's Certificate of Authorization.[2]

---

2. Although the FAA has continually asserted that there are no administrative remedies or appeal rights for Aerial with regard to the action taken by the FAA, Aerial has, in an abundance of caution, filed an appeal to the NTSB under  49 C.F.R. 821.54 so that an argument cannot be made in the future that Aerial did not attempt to exhaust its administrative remedies.  However, Aerial asserts that it was not provided minimal due process in the action that resulted in the revocation of its Certificate of Authorization and

SHUTTS & BOWEN LLP / 200 EAST BROWARD BOULEVARD, SUITE 2100 / FORT LAUDERDALE, FLORIDA 33301 / (954) 524-5505

26.    The FAA acted arbitrarily and capriciously when it canceled Aerial's Certificate of Authority because it failed to identify a legitimate basis for the revocation as set forth in FAA Order 7210.3U, Paragraph 18-1-9. Moreover, any after-the-fact basis it would not bring forward would need to be shown to be uniformly enforced or applied to other similarly situated banner towing companies.

27.    In view of the FAA's actual arbitrary and capricious decision and enforcement of its decision, Aerial contends that under these circumstances, the FAA's actions are unauthorized by law and there is an actual controversy within the jurisdiction of this Court. A binding declaration by this Court as to the invalidity of FAA's actions will effectively adjudicate the rights of the parties.

28.    Aerial also seeks a temporary restraining order, a preliminary injunction and a permanent injunction preventing the FAA from continuing to enforce the revocation of Aerial's Certificate of Authorization and from issuing any further orders or demands based on its arbitrary and capricious decision with regard to Aerial.

29.    A permanent injunction is necessary to prevent irreparable harm to Aerial, for which Aerial would otherwise have no adequate remedy at law.

WHEREFORE, Aerial prays that this Court will enter a judgment as follows:

(A)    finding that the FAA's decision to revoke Aerial's Certificate of Authorization, as applied in this matter, was arbitrary, capricious and otherwise contrary to the law;

——————————————— (cont.)

agrees with the FAA that the FAA statutes and regulations do not provide any due process to Aerial with regard to its decision.

6

(B) restraining defendants and their officers, employees, agents, or servants from the enforcement of the revocation of Aerial's Certificate of Authorization;

(C) enjoining the FAA, pursuant to 28 U.S.C. § 2201, from continuing to administer the revocation of Certificate of Authorization process with no due process rights for a Certificate of Authorization holder and no administrative or judicial review or appellate rights; and

(D) Because of the gravity of the actual and threatened harm to Aerial arising from the enforcement by the FAA of its arbitrary and capricious decision, Aerial also requests a speedy hearing and advancement of the cause on this Court's calendar pursuant to Rule 57 of the Federal Rules of Civil Procedure, and such other or further relief as it may deem necessary and proper.

Respectfully submitted,

**SHUTTS & BOWEN LLP**

By: _Edward J. O'Sheehan_

SIDNEY C. CALLOWAY
Florida Bar No.: 790982
scalloway@shutts.com
EDWARD J. O'SHEEHAN
Florida Bar No.: 0056790
eosheehan@shutts.com
200 East Broward Boulevard
National City Center, Suite 2100
Fort Lauderdale, Florida 33301
Telephone: (954) 524-5505
Facsimile: (954) 888-3071
Attorneys for Plaintiff

FTLDOCS 5280567 1

7

### U.S. DEPARTMENT OF TRANSPORTATION
#### FEDERAL AVIATION ADMINISTRATION

# CERTIFICATE OF WAIVER OR AUTHORIZATION

ISSUED TO
AERIAL BANNERS, INC.

ADDRESS
601 SW 77th WAY, HANGER 2
PEMBROKE PINES, FL 33023

This certificate is issued for the operations specifically described hereinafter. No person shall conduct any operation pursuant to the authority of this certificate except in accordance with the standard and special provisions contained in this certificate, and such other requirements of the Federal Aviation Regulations not specifically waived by this certificate.

OPERATIONS AUTHORIZED
DAYTIME ADVERTISING - BANNER TOW OPERATIONS
NIGHT TIME ADVERTISING (NIGHT SIGN) LIGHTED DIGITAL SIGN MOUNTED TO THE AIRFRAME OF THE AIRCRAFT

AREA OF OPERATIONS: CONTINENTAL UNITED STATES

LIST OF WAIVED REGULATIONS BY SECTION AND TITLE

NONE

## STANDARD PROVISIONS

1. A copy of the application made for this certificate shall be attached to and become a part hereof.
2. This certificate shall be presented for inspection upon the request of any authorized representative of the Administrator of the Federal Aviation Administration, or of any State or municipal official charged with the duty of enforcing local laws or regulations.
3. The holder of this certificate shall be responsible for the strict observance of the terms and provisions contained herein.
4. This certificate is nontransferable.

NOTE.---This certificate constitutes a waiver of those Federal rules or regulations specifically referred to above. It does not constitute a waiver of any State law or local ordinance.

## SPECIAL PROVISIONS

"See Attached" [X]

Special Provisions Nos. 1 to 28 inclusive, are set forth on the reverse side hereof.

This certificate is effective from OCTOBER 1, 2006 to SEPTEMBER 30, 2008, inclusive, and is subject to cancellation at any time upon notice by the Administrator or his authorized representative.

BY DIRECTION OF THE ADMINISTRATOR

SOUTHERN
(Region)

September 7 2006
(Date)

(Signature)

MANAGER ASO-FSDO-19
(Title)

FAA Form 7711-1 (7-74)          AFS Electronic Forms System - v2.2

EXHIBIT
"A"

# BANNER TOWING - SPECIAL PROVISIONS
## BROWARD FLIGHT CENTER

The Certificate of Waiver or Authorization issued to Broward Flight Center, is predicated on the following Special Provisions. These Special Provisions are to be complied with at all times when conducting flight operations under the intent of this authorization.

1. No towing operations are authorized that will create a hazard to other air traffic or persons and property on the ground.

2. Operations may be conducted only under Visual Flight Rule (VFR) weather conditions between the hours of official sunrise and sunset.

3. Prior to operations in an airway or any other controlled airspace, the controlling Air Traffic Control (ATC) facility shall be notified. Any operation conducted in an airspace classification which requires two-way radio communications is restricted to aircraft equipped with an operational/functioning two-way radio and the controlling facility must be notified prior to entering the airspace area. The pilot must maintain radio contact until leaving this area.

4. Prior to conducting operations over a municipality, the appropriate municipal/community officials will be notified if required by any ordinance or law.

5. This Authorization and these Special Provisions does[1] not supersede any local, state, or city ordinance
or law prohibiting aerial advertising.

6. While conducting operations under this Authorization, Broward Flight Center, shall obtain approval to conduct towing operations from the airport manager.

7. Towing operations shall be executed in accordance with a planned course of action with emphasis on the selection of available emergency landing areas.

8. Each pilot- in-command (PIC) shall hold at least an Federal Aviation Administration (FAA) commercial pilot certificate with a valid second class medical for operations under this Authorization. Each PIC shall become knowledgeable with the FAA Form 7711-1 and the Special Provisions.

9. No passengers shall be carried during towing operations. Only crew members who are **essential to the operation** shall be carried on flights conducted under the terms of this authorization. In all cases, if a 'safety observer' is aboard the aircraft, that person shall:

   a. Have completed the company's banner tow training;
   b. Have demonstrated knowledge of banner towing operations;
   c. Be aware as to the recognition of potential mid-air collision situations; and,
   d. Be the holder of at least a Private Pilot Certificate.

10. The banner is to be constructed in such a manner that it will not create a hazard to persons or property on the ground.

11. The towing cable shall be of sufficiently light construction to assure against injury to persons or property on the ground in case of accidental or emergency release, and if metal, shall be insulated so the inadvertent contact with electrical wires will produce no hazard or danger.

12. The tow hitch and release mechanism must have been installed using data approved by the FAA or an appropriate person designated by the FAA.

13. Prior to conducting towing operations, the tow plane's PIC is responsible for a thorough preflight of the tow aircraft, its related equipment, and the object to be towed.

14. The aerial towing equipment shall be picked up in a pre-designated area, subject to the approval of the airport manager. The equipment to be picked up shall be at a distance greater than 500 feet from any active aircraft runway and persons or property on the ground unless prior arrangements have been made with ATC and the airport manager, and a Notice to Airmen (NOTAM) filed (if required).

# BANNER TOWING - SPECIAL PROVISIONS

( )                                              ( )

## Broward Flight Center
### (CONTINUED)

15. The tow rope and banner will be dropped only in a pre-designated area at least 500 feet from persons, buildings, parked automobiles and aircraft. If the tow plane is landed with the rope attached, due care will be exercised so that the trailing rope does not endanger other aircraft in the air or persons, property, or aircraft on the ground.

16. No turns of more than 45 degrees of bank are allowed while operating under this authorization.

17. A copy of this Certificate of Authorization and the Special Provisions, shall be carried in the aircraft at all times while conducting operations under this authority.

18. The FAA retains the right to revoke this Waiver or Authorization at any time the Standard or Special Provisions are not strictly adhered to.

19. The aircraft and pilot on the attached list are authorized to conduct flight operations under the provisions of this Authorization. Whenever there is a change of aircraft or pilots, the issuing Flight Standards District Office (FSDO) must be notified prior to the first date the aircraft or pilot is scheduled to operate. The FSDO must approve the change before the operation involving the new aircraft or pilot takes place.

20. Operations outside of the geographic areas of the Fort Lauderdale Flight Standards District Office (FLL FSDO), may be conducted without obtaining an additional Certificate of Authorization provided that the operations are coordinated with the appropriate FSDO in advance and that all Special Provisions imposed by that office are complied with.

21. Before conducting operations under this Authorization, the holder of this Authorization shall ensure that all pilots:

    a. Satisfactorily complete ground and flight training applicable to the aircraft being used;
    b. Review the Federal Aviation Regulations appropriate to this operation and the Special Provisions of this Authorization;
    c. Review the aircraft flight characteristics at critical slow airspeeds, maximum performance maneuvers, and emergency procedures to include equipment malfunctions and specific banner towing safety procedures.

22. The holder of this Authorization shall maintain a record of the flight training and FAA observation competency check of each pilot used for banner towing under this Authorization. In addition, records and reports shall be maintained and kept current at the home base of operations designated in the application. The following records will be available:

    a. Maintain a banner towing log of each flight conducted under this Authorization to include:
        1. Pilot in command's name.
        2. Airport identification (operations conducted from).
        3. Take-off times.
        4. Landing times.
        5. Area where advertising is being conducted. (Ft. Lauderdale, FL)

    b. These records must be kept at least twelve (12) months from date of flight and made available for inspection by the Administrator upon request.

## SPECIAL FLIGHT OPERATIONS- CONGESTED AREAS/OPEN AIR ASSEMBLY OF PERSONS

23. Operations over congested areas or an open air assembly of persons shall be executed in accordance with a planned course of action with emphasis on selection and availability of emergency landing areas. Due to the area over which such operations are usually conducted, special precautions will be exercised by the pilot to ensure compliance with FAR 91.119(a.), (b.), and (c.). Operations over congested

## BANNER TOWING - SPECIAL PROVISIONS
### AERIAL SIGN COMPANY, INC.
### (CONTINUED)

areas/open air assemblies of persons must be no lower than 1,000 feet above the highest obstacle within a horizontal radius of 2,000 feet and operations elsewhere shall be in compliance with FAR Section 91.119(c.).

24. When banner tow operations are conducted at stadiums, the following limitations are to be followed:
    a. At **NO TIME** shall an aircraft fly across a stadium any time a game or event is scheduled or in progress. All flights must be outside the stadium boundary.
    b. An aircraft overtaking another aircraft shall pass to the right and well clear of the overtaken aircraft.

25. When banner tow operations are being conducted along oceanfront beach areas, the following limitations shall apply:

    a. At **NO TIME** shall an aircraft fly directly down a beach-front over persons or property on the surface. This includes swimmers.
    b. All turn-arounds shall be conducted toward the open sea when weather and traffic permits.

26. Operations within and through the Ft. Lauderdale International Airport will be coordinated through a Letter of Agreement (LOA) with FLL ATCT. This new LOA will be finalized and in place before 8/31/2002. Point of contact at the FLL ATCT is Ronald S. Boyd at 954-356-7932.

27. No flight will be allowed below minimum safe altitudes IAW FAR 91.119(a, b, c,)

**SPECIAL MAINTENANCE PROVISIONS:**

28. No person may operate an aircraft used in banner towing unless:

    The aircraft has been inspected by the FAA and placed on the attached list of aircraft authorized to operate under this certificate of authorization.

    A **single or multiple tow hitch release** system has been installed using methods, techniques, and practices approved by the Administrator; e.g., Type Certificate Data Sheets, aircraft specifications, aircraft manufacturer's kits, STC's, FAA field approvals, or AC 43.13-2A under certain circumstances.

    A "safety link" or other safety device is installed between the tow hitch release and banner assembly. This device must be designed to break-away at loads no greater than the structural design limits of the tow release system.

    The tow hitch, release handle and cable, attachment fittings, grapple hook and takeoff tow line shall be inspected for proper condition, deterioration, apparent defects, and satisfactory operation on a daily basis.

    A suitable shoulder harness has been installed and available for use by each pilot. This harness may be considered a secondary system and worn in conjunction with the aircraft's primary restraints.

( )                                    ( )

# BANNER TOWING - SPECIAL PROVISIONS
## AERIAL SIGN COMPANY, INC.

Attachment 1 - Aircraft and Pilot Listing

The aircraft and pilots listed below are authorized to conduct flight operations under the provisions of this authorization:

    a. Aircraft -AN INSPECTION OF EACH AIRCRAFT WILL BE CONDUCTED BY AN FAA AIRWORTHINESS INSPECTOR PRIOR TO THE USE OF THE AIRCRAFT IN BANNER TOW OPERATIONS:

    b. See attached list.

    c. Pilots. See attached list

All air crew personnel and responsible individuals must sign this Authorization signifying that they have read, understand, and will comply with these provisions prior to the commencement of activities.  The signed record of the Authorization is to be maintained by the sponsor/company for duration of the waiver. Also, a copy of the signed Authorization or amended Authorization shall be sent to ASO-FSDO-17 and/or ASO-FSDO19 as soon as this document is signed by all air crews and responsible individuals .

**We the undersigned, hereby certify that we have read, thoroughly understand, and will comply with the Certificate of Authorization and the Special Provisions attached thereto issued by the Federal Aviation Administration.**

| PILOT | SIGNATURE & DATE | CERTIFICATE GRADE & # |
|---|---|---|
| James A Miller | [signature] 11-2-06 | 31035 86 |
| Holly L Mosley | [signature] | |
| NISHA LACKHANSINGH | [signature] 11-2-06 | |
| Lindsey Burghedis | [signature] | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |



December 9, 2007

Jay Rodriguez

Miami FSDO 19

Dear Sir,

Per your visit to my facility on December 8, 2007 I have done the following: I contacted Piper to inquire if there was a more updated POH; they said there was not one available. The Piper representative said they would work on an update; however, they no longer have any support for the PA-25's because they sold the Type Certificate to Lavia SA in Argentina. I also sent an E-MAIL to Lavia requesting any old POH's that would comply with the Type Certificate for all my models. Since there is not a more current POH, per your request I have made amendments to the existing copies I have.

I attached a permanent label to the fuel page of the PA-25's POH addressing the changes to fuel tanks that I have made. I also created additional weight and balance data sheets that have been added to the aircrafts weight and balance section of the POH for each individual aircraft. Please see attachments for copies of these amendments.

I do not believe I am violating any FARs by operating N131AB with an FAA issued Banner Tow/Agricultural air worthiness certificate. If the certificate was issued incorrectly why did the FAA not send me or the former owner a letter rescinding the certificate or asking that we pick a single restricted operation? I have included some data to help substantiate my claim.

The staff of Aerial Banners and I have had a meeting discussing the issues you have brought to my attention. We will be revising our training course and materials, and the pilots will be subject to a commercial standards quarterly flight review. Nick Schillen, Master CFI of NS Aviation (a part 141 FAA approve flight training center) is contracted to conduct these quarterly flight proficiency checks. Additionally my pilots will be receiving advanced unusual attitude training with emphasis on situational awareness, stall-spin recovery and the PIC's ultimate responsibility of the safety of the flight. As a company, Aerial Banners will be creating a "banner towing" safety video that will be provided to our pilots and any interested parties. We have hired Ruben Sanpedro as Chief Pilot and he will be



**EXHIBIT**
**"B"**

conducting meetings; which will expand on emergency situations with emphasis on banner towing scenarios, with the pilot staff three times a month, and will be sitting in on the proficiency checks.

All pilots seeking employment with Aerial Banners, Inc. are subject to two initial flight evaluations in addition to written knowledge test. These standards have been in place since Aerial Banners, Inc. was created. We will be revising our written tests to mirror the FAA commercial written test, and our Chief Pilot will be conducting the initial flight evaluations. Our pilots who are to be conducting the banner tow training will be checked out by the Chief Pilot and Nick Schillen prior to engaging in training new pilots. We have also instructed our current pilot staff to attend any AOPA safety meetings and participate in the "Wings" program.

My partner Dana Benyo whom does our record keeping has hired an assistant to help her, and to reorganize our record system. She has also placed a want ad for a Direct of Operations. If you have any more suggestions on how we can better improve our operation or if you have any questions please feel free to contact me.


Bob Benyo, President

Aerial Banners, Inc.



U.S. Department
of Transportation
**Federal Aviation
Administration**

South Florida FSDO-19
8600 NW 36th Street, Suite 200
Miami, Florida 33166

December 14, 2007

### CERTIFIED MAIL – RETURN RECEIPT

Mr. Robert Benyo
Aerial Banners, Inc.
601 SW 77th Way, Hangar 2
Pembroke Pines, FL 33023

Dear Mr. Benyo:

This letter is to inform you that in accordance with Federal Aviation Administration (FAA)
Order 7210.3U, Paragraph 18-1-9 and 8900.1, Volume 6, Chapter 11, Section 4, the South
Florida Flight Standards District Office is cancelling the Certificate of Waiver or
Authorization (FAA Form 7711-1), which it had issued to Aerial Banners, Inc., dated
October 1, 2006. This cancellation is effective immediately.

In making this determination the FAA South Florida FSDO considered all the following
significant safety events involving Aerial Banners:

- Banners tow aircraft accident occurring on September 25, 2005 (aircraft N7788Z).
- Banner tow aircraft accident occurring on September 26, 2005 (aircraft N86AB).
- Banner tow aircraft accident occurring on December 22, 2005 (aircraft N86AB).
- Banner tow aircraft accident occurring on June 23, 2006 (aircraft N7788Z).
- Banner tow aircraft accident occurring on November 10, 2007 (aircraft N131AB).
- Banner tow aircraft maintenance issue occurring on June 5, 2003 (No.2003SO350087).
- Banner tow aircraft maintenance issue occurring on September 13, 2005 (No. 2006SO190007).
- Banner tow aircraft operational issue occurring on December 12, 2005 (No. 2006SO190142).
- Banner tow aircraft maintenance issue under investigation on engine installation of Lycoming O-540-G1A5 on N131AB without approved data and a FAA Form 337 and new airworthiness certificate/registration, date discovered December 5, 2007 (No. 2008SO190015).

In the past two (2) years, Aerial Banners has been involved at least nine (9) significant
safety events involving aircraft accidents/incidents, which has seriously injured several
pilots. Through delegation by the Administrator we are cancelling the Certificate of
Waiver/Authorization issued by the FAA South Florida FSDO based upon our determination



**EXHIBIT
"C"**

that safety and the public interest would not be served allowing the continuation of such a Waiver.

If you have any questions concerning this matter, please contact this office.

Sincerely,

Sergio López
Manager

%JS 44 (Rev. 11/05)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.) **NOTICE: Attorneys MUST Indicate All Re-filed Cases Below.**

## I. (a) PLAINTIFFS
AERIAL BANNERS, INC.

CIV-ZLOCH

**DEFENDANTS**
FEDERAL AVIATION ADMINISTRATION, and MARION C. BLAKEY

**(b)** County of Residence of First Listed Plaintiff
(EXCEPT IN U.S. PLAINTIFF CASES)

MAGISTRATE JUDGE
SNOW

County of Residence of First Listed Defendant
(IN U.S. PLAINTIFF CASES ONLY)

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)
Sidney C. Calloway, Esq. & Edward J. O'Sheehan, Esq., Shutts & Bowen LLP, 200 E. Broward Blvd., Ste. 2100, Ft. Lauderdale, FL 33301; Tel: 954-524-5505; Fax: 954-524-5506

Attorneys (If Known)

**07-61880**

**(d)** Check County Where Action Arose: ☐ MIAMI- DADE ☐ MONROE ☑ BROWARD ☐ PALM BEACH ☐ MARTIN ☐ ST. LUCIE ☐ INDIAN RIVER ☐ OKEECHOBEE HIGHLANDS

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

☐ 1 U.S. Government Plaintiff
☐ 3 Federal Question (U.S. Government Not a Party)
☑ 2 U.S. Government Defendant
☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

0107CN 61880-WJZ-LSS

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | Med. Malpractice | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 365 Personal Injury - Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' Liability | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 340 Marine | **PERSONAL PROPERTY** | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | ☐ 690 Other | | ☐ 490 Cable/Sat TV |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | **LABOR** | **SOCIAL SECURITY** | ☐ 810 Selective Service |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 195 Contract Product Liability | | | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 863 DIWC/DIWW (405(g)) | ☒ 890 Other Statutory Actions |
| ☐ 196 Franchise | | | ☐ 740 Railway Labor Act | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | | ☐ 865 RSI (405(g)) | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 442 Employment | **Habeas Corpus:** | ☐ 791 Empl. Ret. Inc. Security Act | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | ☐ 530 General | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 895 Freedom of Information Act |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | | | ☐ 900Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 540 Mandamus & Other | | | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | ☐ 550 Civil Rights | | | ☐ 950 Constitutionality of State Statutes |
| | ☐ 440 Other Civil Rights | ☐ 555 Prison Condition | | | |

FILED by ___ INTAKE

DEC 21 2007

CLARENCE MADDOX
CLERK U.S. DIST. CT.
S.D. OF FLA. - FT. LAUD.

## V. ORIGIN (Place an "X" in One Box Only)
☑ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Re-filed- (see VI below)
☐ 4 Reinstated or Reopened
☐ 5 Transferred from another district (specify)
☐ 6 Multidistrict Litigation
☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. RELATED/RE-FILED CASE(S).
(See instructions second page):
a) Re-filed Case ☐ YES ☑ NO    b) Related Cases ☐ YES ☑ NO
JUDGE ____    DOCKET NUMBER ____

## VII. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing and Write a Brief Statement of Cause (Do not cite jurisdictional statutes unless diversity):
Action for injunctive relief based upon illegal action taken by FAA that put Plaintiff out of business.
LENGTH OF TRIAL via 2 days estimated (for both sides to try entire case)

## VIII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23
DEMAND $ N/A
CHECK YES only if demanded in complaint:
JURY DEMAND: ☐ Yes ☑ No

ABOVE INFORMATION IS TRUE & CORRECT TO THE BEST OF MY KNOWLEDGE

SIGNATURE OF ATTORNEY OF RECORD
*Edward J Shuh*

DATE
Dec. 21, 2007

FOR OFFICE USE ONLY
AMOUNT ____    RECEIPT # ____    IFP ____
54/865